IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 3:10-CR-44 |
| | ) |
| FELIX BOOKER, | ) |

## MEMORANDUM AND ORDER

This criminal case is before the court on the "Defendant's Objections to the Magistrate's Report and Recommendation" [doc. 39]. Magistrate Judge Guyton recommended that "Defendant's Motion to Suppress Evidence Obtained During Unconstitutional Compelled Body Cavity Search" [doc. 11] and "Defendant's Motion to Suppress Statements of Defendant From February 12, 2010" [doc. 13] be denied. The government has responded to the objections [doc. 42], and a transcript of the motion hearing has been prepared [doc. 32]. Therefore, the defendant's objections are ripe for the court's consideration, and for the reasons discussed below the objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

A complete statement of the relevant facts is not necessary. Magistrate Judge Guyton's Report and Recommendation sets out the relevant facts, and this Memorandum will reiterate only those facts that are necessary to put defendant's objections into context.

**I. Defendant's Motion to Suppress Evidence Obtained During Unconstitutional Compelled Body Cavity Search [doc. 11]**

Traffic Stop

Defendant objects to both the length and scope of the traffic stop. There is no issue that the vehicle in which defendant was a passenger was legally stopped for an expired vehicle registration. Defendant objects to the magistrate judge's finding that the prolonged stop was reasonable in duration and scope. He contends that there was not reasonable suspicion that the defendant had engaged in criminal conduct. Defendant further contends that Officer Steakley did not have "reasonable suspicion" and was simply "ferreting out unrelated criminal conduct."

Defendant challenges the magistrate judge's factual finding that Officer Steakley smelled marijuana when the driver's side door was opened. The court has reviewed the hearing transcript and the Report and Recommendation and agrees with Magistrate Judge Guyton's findings regarding the odor of marijuana in the car. The magistrate judge found the officer's testimony credible. The "crumbled up marijuana" that Officer Steakley saw loose on the passenger-side floorboard supports the finding.

Defendant makes a great deal out of the fact that the officer did not do anything with the marijuana on the floor. However, he cites no case law for the significance or relevance of this conduct to the issues in the case nor does he show how this fact diminishes the finding that the search was reasonable in length and scope. The court agrees with Magistrate Judge Guyton that "the character of the traffic stop was 'immediately transformed' when Booker first opened the driver door and Officer Steakley smelled the odor of marijuana." The smell of marijuana was sufficient to establish probable cause to believe that there was marijuana in the car. "Once this probable cause existed, a search warrant was not necessary." *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993); *see also United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) ("[W]e have followed *Garza* consistently in holding that the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle."). Defendant's objections are overruled.

Defendant also makes a number of objections to the findings concerning Officer Steakley's canine partner Argo. He objects to Argo's tendency to alert to residual odors of narcotics that are no longer present. However, it is well established that dogs may alert on residual odors. *United States v. Howard*, 448 F. Supp. 2d 889, 896-98 (E.D. Tenn. 2006). The Sixth Circuit does not require that a drug detection dog be 100% accurate. *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994) (a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and

3

certified); *see also U.S. v. Navarro-Camacho*, 186 F.3d 701, 706 (6th Cir. 1999) (upholding reliability of dog that had rate of reliability between 90 and 97 percent that "occasionally alerted falsely").

Defendant also objects to findings by Magistrate Judge Guyton regarding the specifics of how the canine alert occurred and Officer Steakley's testimony regarding the canine search. The court has reviewed the video of the traffic stop, the testimony of Officer Steakley, and the Report and Recommendation concerning the canine search. The court agrees with Magistrate Judge Guyton that Argo is well-trained, certified, and reliable and that there was an alert on the car by Argo, which was a sufficient basis to establish probable cause to search the car. Defendant's objections are overruled.

Defendant also objects to the seizure of the currency found in his pockets during the pat down performed on him by Officer Steakley. Magistrate Judge Guyton found that Officer Steakley performed the pat down of the defendant after the drug dog had alerted to the scent of narcotics on the car and therefore a pat down search for weapons was constitutional. An officer may perform a pat down of a driver or passenger upon reasonable suspicion that they may be armed and dangerous, *Knowles v. Iowa*, 525 U.S. 113, 118 (1998), and "may seize non-threatening contraband detected by touch during a protective pat-down search if the search stays within the bounds marked by *Terry*," *United States v. Walker*, 181 F.3d 774, 778 (6th Cir. 1999) (citing *Minn. v. Dickerson*, 508 U.S. 366 (1993)). The court has reviewed the Report and Recommendation and the relevant case law, and

4

agrees with Magistrate Judge Guyton regarding the pat down and seized currency. Defendant's objection is overruled.

**Arrest**

Defendant objects to the finding that there was probable cause to arrest him because the Magistrate Judge failed to consider the reasonableness of the arrest under applicable state law. Defendant contends that the Magistrate Judge did not consider *United States v. Di Re*, 332 U.S. 581 (1948) for the application of Tennessee law in this case.

The court has reviewed the Report and Recommendation and the applicable law and agrees with Magistrate Judge Guyton that Tennessee law is inapposite. State law, constitutional or statutory, is irrelevant to the analysis here regarding probable cause to arrest under the Fourth Amendment.

> Neither *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment, and our more recent decisions, discussed above, have indicated that when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same.

*Virginia v. Moore*, 553 U.S. 164, 173 (2008). Defendant's objection is overruled.

Defendant further objects to the magistrate judge's failure to give any weight to the fact that the vehicle was owned by a third person and driven by another person in making his constructive possession analysis. "Constructive possession is established by a showing that a person knowingly has the power and the intention at a given time to exercise

5

dominion and control over an object." *United States v. Beard*, 293 F. App'x 386, 388 (6th Cir. 2008) (quotation marks and citation omitted). Magistrate Judge Guyton determined that defendant's close proximity to the baggies and loose plant material satisfied the probable cause standard that defendant constructively possessed the marijuana. After reviewing the transcript and the Report and Recommendation, the court agrees with Magistrate Judge Guyton regarding this issue. Defendant's objection is overruled.

## **Body Cavity Search**

Defendant objects that the magistrate judge did not consider the three separate digital rectal exams ("DRE") preformed by Dr. LaPaglia. The defendant's time in the hospital consisted of one body cavity search procedure, not three separate procedures. At the outset, Dr. LaPaglia, as an emergency room physician, explained to the defendant the stages he would follow, up to an including the extreme method of paralysis, in order for him to address the situation. Each step was part of the physician's procedures and encompassed the process of one body cavity search. The court agrees with Magistrate Judge Guyton's approach, and this objection is overruled.

Defendant also objects to Magistrate Judge Guyton's finding that there was a "clear indication" that a search of defendant's rectal cavity would produce incriminating evidence. He argues that three of the six factors the magistrate judge relied on in his finding occurred almost three hours prior to the compelled search. However, the six factors

6

identified by the magistrate judge create a sequence of events that build on each other and create an entire picture. Each builds on the next, from the defendant initially clenching his buttocks during the traffic stop to the last factor with the defendant moving as though he was trying to push something up his rectum. The factors need to be consider as a sequential time line that taken together lead to the magistrate judge's conclusion that "the officers had a 'clear indication' that the Defendant was attempting to conceal contraband in his rectum." The court agrees with Magistrate Judge Guyton, and this objection is overruled.

Defendant also objects that the magistrate judge did not explain the inconsistency between Shelton's testimony that he saw a string protruding from defendant's anus and the fact that no string was recovered by Dr. LaPaglia. While a string was not recovered, the import of Shelton's testimony was that he observed something protruding from defendant's anus during the strip search, which was not inconsistent with the removal of the drugs from defendant's rectum. This objection is overruled.

Next the defendant objects to the magistrate judge's finding that exigent circumstances existed to justify the failure to obtain a search warrant. Magistrate Judge Guyton found that exigent circumstances existed that necessitated taking the defendant to the hospital for a body cavity search because 1) the drugs believed to be in his rectum could be readily absorbed and disappear before the officers had time to obtain a search warrant and 2) the presence of the drugs in defendant's rectum endangered him.

7

The court has considered the transcript, the Report and Recommendation, and the relevant case law and agrees with Magistrate Judge Guyton concerning the existence of exigent circumstances. The fact that the defendant was not displaying a fever or signs of medical distress did not mean that he was not endangered by the presence of drugs suspected to be in his rectum. Dr. LaPaglia confirmed that fact in his testimony. Magistrate Judge Guyton noted by referencing the testimony of Dr. LaPaglia that the amount of crack cocaine removed from the defendant "would be a life threatening amount if absorbed through the Defendant's rectum, which is a 'part of the body that absorbs drugs very readily.'" The court agrees with Magistrate Judge Guyton that exigent circumstances existed. Defendant's objection is overruled.

Defendant objects to Magistrate Judge Guyton's finding that "the DRE in this case was not a search within the scope of the Fourth Amendment's protections because it was conducted by a private actor." Magistrate Judge Guyton also found that Dr. LaPaglia "was not acting under the direction of the officers." The magistrate judge determined that while it was the officers who brought the defendant to the hospital because they believed he had drugs in his rectum, it was the treating doctor who independently made the decisions regarding the manner and method of treatment. Magistrate Judge Guyton applied to the facts of this case the two-part test set established by the Sixth Circuit in *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985) for determining when the actions of a private individual are considered governmental action. The factors are 1) that "the police must have instigated,

encouraged or participated in the search" and 2) that "the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *Id.*

Magistrate Judge Guyton determined that "[a]lthough it is arguable that Officers Shelton, Steakley, and Ridenour 'instigated, encouraged, or participated in' the DRE, it is clear that Dr. LaPaglia did not perform the DRE 'with the intent of assisting the police in their investigative efforts.'" He pointed out that Dr. LaPaglia testified that his actions were guided by his duties as an emergency room physician. Dr. LaPaglia explained that once the defendant was in the emergency room, he really did not have a choice about whether a DRE would occur if the doctor's suspicion was high enough that a dangerous substance was in the defendant's rectum. Dr. LaPaglia testified that he performed the DRE because the background information from the officers about possible drugs in the defendant's rectum gave him suspicion that the defendant was in danger. Dr. LaPaglia repeatedly testified that he did not act under the direction of the officers.

Defendant objects to the magistrate judge's finding and contends that Dr. LaPaglia acted pursuant to the officers' direction because 1) they transported him to the hospital; 2) they told the doctor what they suspected; 3) the officers held the defendant down; 4) the officers stayed in the hospital room while the defendant was paralyzed; and 5) Dr. LaPaglia discontinued treatment immediately after the removal of the object and no further medical treatment was administered. The fact that the officers brought the defendant to the hospital and informed the doctor about the suspected drugs provided Dr. LaPaglia with

9

background information. Those facts do not establish that the officers continued to control his actions, as Dr. LaPaglia testified that his decisions regarding the procedures to follow were made independently as an emergency room physician concerned with the well being of the defendant. As to the claim that the officers held the defendant down during the administration of the shot to relax him, the record does not support that fact. Dr. LaPaglia testified that when the shot was administered, the defendant was handcuffed and shackled. He gave no indication that the defendant was restrained in any other way. The officers logically stayed with the defendant throughout the procedure since he was under arrest. As to factor five, the record again does not support defendant's contention. The record reflects that Dr. LaPaglia was concerned with the well being of the defendant after the object was removed. He woke the defendant up and removed the tube from his throat. In addition, Officer Shelton testified that he did not transport the defendant back to the jail until "after the doctor said it was okay for him to go." These objections are overruled.

Defendant also argues that the medical records do not support the Magistrate Judge's findings. He argues that they do not reflect that he was brought in for emergency medical care or that he was experiencing medical problems. Dr. LaPaglia testified regarding what he needed to do as an emergency room physician faced with the defendant's circumstance. Magistrate Judge Guyton gave credit to that testimony. The court agrees with Magistrate Judge Guyton that Dr. LaPaglia's intent was to see that the defendant did not harm himself with something that he might have placed in his rectum. As Dr. LaPaglia

stated, "The whole purpose of me doing this exercise [the DRE] was to assure that there was not anything dangerous in the patient's rectum."

The court has considered the transcript, the Report and Recommendation, and the relevant case law and agrees with Magistrate Judge Guyton that the DRE was not a search within the scope of the Fourth Amendment's protection because the person who conducted the exam, Dr. LaPaglia, was a private actor. Defendant's objections on this issue are overruled.

Magistrate Guyton also performed an alternate analysis in the event the court found that Dr. LaPaglia was acting at the direction of the officers and was therefore a government agent. Using the three-factor test set out in *Schmerber v. California*, 384 U.S. 757 (1966) and also applied in *Winston v. Lee,* 470 U.S. 753 (1985), he concluded that the DRE was a reasonable procedure under the circumstances and was "reasonably employed, particularly given the risk to the Defendant from the drugs in his rectum and the Defendant's actions hindering their removal." Defendant objects to this finding and the application of the factors.

The first factor considers the "extent to which the procedure may threaten the safety or health of the individual." *Winston*, 470 U.S. at 761; *Schmerber*, 384 U.S. at 771. Defendant argues that Magistrate Judge Guyton should have considered less risky alternative procedures such as taking an x-ray of the defendant's abdomen or monitoring defendant's bowel movements. With regard to an x-ray, Dr. LaPaglia testified that it would only serve

11

to establish that something was inside the defendant; it would not aid in its removal. As to the alternative methods suggested by defendant, these were not considered by Dr. LaPaglia and not before Magistrate Judge Guyton. However, in light of Dr. LaPaglia's testimony that he considered the defendant in danger because of the possibility of his having drugs in his rectum, an alternative such as monitoring his bowel movements would not be a realistic option.

The second factor applied is the "extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity." *Winston*, 470 U.S. at 761; *Schmerber*, 384 U.S. at 771. Magistrate Judge Guyton found that the DRE was extremely invasive on defendant's personal privacy interests and bodily integrity. However, he also found that the procedures were medically necessary and that fact was relevant to application of the second factor. The magistrate judge pointed out that a reasonable person would be shocked if medical personnel failed to provide necessary medical aid to a person in custody, and death resulted. He thus found that the second factor weighed slightly in favor of finding the DRE reasonable.

Defendant objects and argues that the cases relied on by the magistrate judge concerning the failure to render medical aid are distinguishable from the circumstances in this case. He argues that the DRE was extremely invasive of the defendant's personal privacy and bodily integrity and the second factor should weigh heavily in favor of finding the DRE procedure unreasonable.

Magistrate Judge Guyton recognized the extremely invasive nature of the DRE under factor two but also considered the medical necessity aspect of the case. While the cases cited may be factually different, the fact remains that a medical situation existed affecting the defendant's health that was addressed by Dr. LaPaglia in the emergency room. The magistrate judge weighed the factor accordingly.

The third factor weighs "the community's interest in fairly and accurately determining guilt or innocence. This interest is of course of great importance." *Winston*, 470 U.S. at 762; *Schmerber*, 384 U.S. at 770, 771.

As to this factor, Magistrate Judge Guyton found:

> In the present case, the crack cocaine removed from the Defendant's rectum is the central piece of evidence supporting his charges. The DRE was a highly effective, and medically necessary, means of obtaining this evidence. This Court has already found that the officers had a "clear indication" that the Defendant had drugs in his rectum. The fact that these drugs could have been readily absorbed into the Defendant's body if not removed provides a compelling need for the procedure employed. This factor weighs in favor of finding that the DRE was reasonable.

Defendant objects to this finding arguing that he was subjected to the DRE on the officers' suspicion that he was concealing contraband and that suspicion was based on pure speculation. He further argues that the officers never attempted to obtain a search warrant before subjecting him to the intrusive procedure. Defendant also points out that he was arrested for possession of only 0.06 grams of marijuana in the passenger seat of the car in which he was a passenger. Defendant contends that his interests in privacy and security

13

outweigh the community's interest in fairly and accurately determining his guilt.

The record and facts as discussed and developed in the Report and Recommendation by the magistrate judge demonstrate that the officers had more than a speculative suspicion that defendant had contraband concealed in his rectum. The officers had a "clear indication" from the sequence of events that transpired beginning with the traffic stop and continuing through the strip search and transportation to the hospital. The lack of a warrant is explained by the exigent circumstances found to exist. Finally, while the defendant was arrest for possession of the small amount of marijuana, events, that included conduct by the defendant, turned the situation into something more.

The court has considered the Report and Recommendation, the transcript, and the relevant case law and agrees with Magistrate Judge Guyton concerning the reasonableness of the DRE. A balancing of the applicable factors from *Schmerber* and *Winston* results in a finding that under the circumstances of this case, and in light of the medical risk to the defendant from the drugs in his rectum and his actions impeding their removal, the DRE was a reasonable procedure. Defendant's objections on this issue are overruled.

## II. "Defendant's Motion to Suppress Statements of Defendant From February 12, 2010" [doc. 13]

Defendant objects to the magistrate judge's finding that the defendant made "a knowing, voluntary, and intelligent waiver of his right to remain silent." Defendant simply argues that his continued requests to Officer Steakley to comply with state law and give him a citation rather than arrest him and the physical contact by Officer Ridenour during the traffic stop should be considered in deciding whether the waiver was voluntary.

The court has reviewed the Report and Recommendation, the relevant case law, the video of the traffic stop, and the transcript of the suppression hearing. The court agrees with Magistrate Judge Guyton that the defendant received a *Miranda* warning, understood it, and voluntarily spoke with Officer Steakley. Whether he asked Officer Steakley for a citation in lieu of an arrest is irrelevant to whether he voluntarily spoke with the officer. It was after receiving his *Miranda* warning that the defendant offered to give up his rights to the confiscated cash in exchange for being released with a citation. Although the video of the traffic stop does not have audio accompaniment, it confirms Officer Ridenour's testimony that he used physical contact with the defendant because the defendant would not stay where he was directed by the officers. Officer Ridenour's conduct was not of a nature to have any impact on the voluntariness of the defendant's waiver of his right to remain silent. Defendant's objections are overruled.

Therefore, the courts **ADOPTS** the magistrate judge's Report and Recommendation in its entirety, and the defendant's objections are **OVERRULED**. It is hereby **ORDERED** that "Defendant's Motion to Suppress Evidence Obtained During Unconstitutional Compelled Body Cavity Search" [doc. 11] and "Defendant's Motion to Suppress Statements of Defendant From February 12, 2010" [doc. 13] are hereby **DENIED**.

**IT IS SO ORDERED**.

ENTER:

s/ Leon Jordan
United States District Judge